**[ECF Nos. 151, 180, 193, 199]**

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **IN RE RONALD H. TUTTLE** | Civil No. 20-2523 (RMB/SAK) |

**OPINION AND ORDER**

This matter is before the Court on various motions [ECF Nos. 151, 180, 193, 199] filed by *pro se* Plaintiff Ronald H. Tuttle. Plaintiff's motions seek, *inter alia*, to compel certain discovery or alternatively, the imposition of spoliation sanctions under Federal Rule of Civil Procedure 37(e). Plaintiff's final motion in this four-part volume further seeks to strike his first three motions, which are largely duplicative of one another and seek similar relief. The Court received the responses in opposition of Defendants United States of America and C.O. Tutela (collectively, "Defendants") [ECF Nos. 168, 182, 195, 202], and Plaintiff's replies [ECF Nos. 173, 183, 196]. The Court exercises its discretion to decide Plaintiff's motions without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Plaintiff's fourth motion is **GRANTED** in part and **DENIED** in part, and his remaining motions are **DENIED** as moot.

**I.    BACKGROUND**

Since the parties are familiar with the case and its factual and procedural background, only the most salient points will be set forth herein. This action involves two claims: a claim under the Federal Tort Claims Act against the United States, and a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Tutela for an alleged Eighth Amendment violation. Plaintiff's claims arise out an alleged incident that transpired while

he was an inmate confined at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey. In brief, Plaintiff alleges he was sexually assaulted by Tutela, a corrections officer at FCI Fort Dix. Specifically, Plaintiff alleges the assault occurred in the shower area of the Special Housing Unit ("SHU") on December 16, 2018. Defendants deny these allegations and maintain that Tutela was neither working nor present on the day in question.

The dispute underlying all four motions arises out of Plaintiff's second set of requests for production that he served on Defendants on March 7, 2023. *See* Costanzo Decl., Ex. B [ECF No. 169-2]. Specifically, it revolves around Request for Production ("RFP") Nos. 3 and 4, which sought the following:

> 3. . . . "Photographs" of all cameras that point into shower areas (in color) on both floors of [the SHU] and top floor marked as top floor. (this is relevant since I have found cases that state "admission of guilt" for not having camera footage . . . and since there is no camera footage that exists these prictures [sic] are relevant to my argument that [if] there was camera footage it would have proved what happened and it would have proved eric tutela worked on date of incident)
>
> 4. . . . [A] snapshot photo (birds eye view) of exactly what camera is seeing that points into [the SHU] shower area of any and all cameras that point into [the SHU] shower area on both floors of [the SHU] with top floor marked as top floor. (Again this is relevant since as explained in (3) above it is an "admission of guilt to not have camera footage of incident" along with fact camera would have proved incident and proved tutela worked on date of incident)

*Id.* at 1–2. In response to RFP Nos. 3 and 4, Defendants stated as follows:

> 3. . . . Defendants object to the premise of this request to the extent Plaintiff contends there is any "'admission of guilt' for not having camera footage." Defendants further object because "camera" is not defined, is vague, and may be subject to multiple interpretations. Notwithstanding and without waiving any objections, Defendants respond that due to privacy issues, there are no recording devices in or pointing into the shower areas of the FCI Fort Dix SHU. Therefore, there are no responsive documents.
>
> 4. . . . Defendants object to the extent this request is premised upon the assumption that there are cameras in or pointing into the shower areas in the FCI Fort Dix SHU. Defendants further object because "camera" is not defined, is vague, and may be subject to multiple interpretations. Notwithstanding and without waiving any

2

> objections, Defendants respond that due to privacy issues, there are no recording devices in or pointing into the shower areas of the FCI Fort Dix SHU. Therefore, there are no responsive documents.

Costanzo Decl., Ex. C, at 5–7 [ECF No. 169-3].

On May 8, 2023, the Court conducted an on-the-record status conference with the parties. At the conference, Plaintiff complained of Defendants responses to RFP Nos. 3 and 4. Defendants reiterated that recording devices are neither placed in nor pointed into the shower areas of the SHU. As such, Defendants asserted that no responsive materials existed. Plaintiff then suggested that he also sought camera footage from the hallways leading to and from the shower areas. Defendants objected on the basis of relevance, arguing that the allegations underlying Plaintiff's claims took place in a shower cell, not a hallway. The Court partially agreed with Defendants' position, but also noted that such footage, if it existed, could be relevant to Plaintiff proving whether Tutela was present on the date of the alleged incident. The Court reasoned that such footage could have potentially captured Tutela's presence on or around the date and time of the alleged incident. Thereafter, the Court issued an order requiring Defendants to

> promptly inquire into the existence of materials responsive to Plaintiff's discovery requests concerning surveillance videos and/or photos from the hallway near the showers at FCI Fort Dix. . . . Defendants shall write the Court to advise whether any such materials exist, and if so, whether Defendants produced said materials to Plaintiff or otherwise objected to their production.

Am. Sched. Order, May 9, 2023, ¶ 2 [ECF No. 144]. Defendants advised no such footage existed. *See* ECF No. 146. After reasserting their relevancy objection, Defendants further advised that, "[b]ecause of the comprehensive nature of ongoing surveillance procedures and operations, video recordings of routine content, such as escorting inmates . . . in the SHU hallway," is only retained for ten days pursuant to the Bureau of Prison's ("BOP") Retention Schedule. *See id.* at 2.

Shortly after Defendants filed this letter, Plaintiff's motions ensued. The Court should also note that the four motions at issue here represent just a small sample of similar filings by Plaintiff. *See, e.g.*, ECF Nos. 147, 149, 155–57, 161, 165, 167, 174, 177, 187, 192, 194, 200. Defendants specifically note in their opposition to Plaintiff's third motion that his "spoliation arguments are largely repetitive" of those raised in his first two motions. ECF No. 195, at 1. In response to this critique, Plaintiff filed his fourth and final motion, which seeks "TO STRIKE ALL ACTIVE MOTIONS OR PETITIONS ON THE DOCKET BUT THIS ONE AND REVIEW THIS ONE FOR THE 'ADVERSE SPOLIATION SANCTION MOTION.'" ECF No. 199, at 1 (emphasis in original) (stating that the purpose is "to clean up the docket"). In light of this request, the Court will deny Plaintiff's first three motions as moot and restrict its review to his fourth and final motion [ECF No. 199] (hereinafter, "Plaintiff's motion"). However, the Court will rely upon Defendants' opposition arguments to Plaintiff's former motions, as necessary, since each response incorporates all preceding responses due to the duplicative nature of the motions.

Plaintiff's motion consists of a forty-four-page, somewhat incomprehensible brief. It also includes an additional forty-two pages of unmarked, unpaginated, and unindexed exhibits, bound together in no apparent order. Despite the disorder, the relief sought is simple and straightforward. Plaintiff seeks sanctions in the form of entering a default judgment against Defendants for alleged spoliation of evidence under Federal Rule of Civil Procedure 37(e)(2)(C).[1] *See* Pl.'s Mot. at 1. Plaintiff contends that Defendants had a duty to preserve the SHU hallway footage as of the date of the incident on December 16, 2018. *See id.* at 9–11. Plaintiff also contends that the footage is relevant, and that Defendants fail to adequately account for its loss. *See id.* at 12–23.

---

[1] In a supplemental filing, Plaintiff further seeks to compel Defendants to produce "pictures" of the SHU Hallway that were originally sought in RFP Nos. 3 and 4. *See* ECF No. 200.

4

Defendants oppose Plaintiff's motion on procedural and substantive grounds. The Court, however, will only rely upon those arguments that are material to resolving the instant motion. Defendants argue that Plaintiff fails to establish relevant footage ever existed or that they had a duty to preserve such footage. *See* ECF No. 168, at 17–23. Specifically, Defendants contend there was no reasonable anticipation of litigation within the BOP ten-day retention window. Therefore, Defendants could not have reasonably foreseen they had a duty to preserve any camera footage. They state that Plaintiff did not submit his administrative tort claim until August 30, 2019, over eight months after the reported incident; he did not reference any camera footage until after filing this lawsuit and did not seek such footage until propounding RFP Nos. 3 and 4 in March of 2023, *see id.* at 18; and Plaintiff's initial complaint with the BOP denies physical contact with Tutela and lists "SHU 3rd floor showers" as the only location. *See id.* at 21 (citing Fernandez Decl., Ex. 7). No reference is made to a SHU hallway. Thus, Defendants argue that they were under no duty to preserve such footage. Insofar as Plaintiff seeks sanctions for failing to preserve camera footage from the SHU shower areas, Defendants further argue that no such footage ever existed. As such, Defendants maintain that Plaintiff's motion must be denied.

## II.  DISCUSSION

### A.  Legal Standard

Spoliation of evidence traditionally occurs where evidence is either altered or destroyed. *See generally Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). In the context of spoliation of electronically stored information ("ESI"), Federal Rule of Civil Procedure 37(e) applies. Here, there is no dispute that the evidence at issue constitutes ESI. Thus, Plaintiff's motion is governed by Rule 37(e), which specifically provides as follows:

>(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>>(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>>(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>>(A) presume that the lost information was unfavorable to the party;
>>>
>>>(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>>(C) dismiss the action or enter a default judgment.

It is self-evident that to obtain sanctions pursuant to Rule 37(e), spoliation must occur. *See Kavanagh v. Refac Optical Grp.*, No. 15-4886, 2017 WL 6395848, at *2 (D.N.J. Dec. 14, 2017). To prove spoliation occurred, the party seeking sanctions must prove that ESI was "lost." *See id.* (citations omitted). This necessarily entails establishing that the ESI at issue actually existed. *See Eur. v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175–76 (S.D.N.Y. 2022) (citation omitted). Nevertheless, since Rule 37(e) is based on the common-law duty to preserve, "[t]he rule does not apply when information is lost before a duty to preserve arises." FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment. A duty to preserve arises in instances where litigation is reasonably foreseeable. *See Bull*, 665 F.3d at 73. "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad of factual situations inherent in the spoliation inquiry.'" *See id.* at 77–78 (quoting *Micron Tech., Inc.*, 645 F.3d at 1320). The party seeking sanctions bears the burden of showing that spoliation occurred and what sanctions are appropriate.[2]

---

[2] Plaintiff's motion fails to address what, if any, burden of proof is applicable here. *Compare Cat3,*

6

B. Analysis

Defendants argue Plaintiff fails to satisfy his burden of showing that spoliation occurred. The Court agrees. To the extent that the motion seeks sanctions for failing to preserve camera footage from the SHU shower areas, Plaintiff's motion fails. He fails to establish such footage ever existed. Consequently, Plaintiff is incapable of establishing that said evidence was "lost." With respect to the sanctions sought for failing to preserve camera footage from the SHU hallway, Plaintiff's motion also fails. He fails to establish that a duty to preserve such evidence arose prior to the close of the BOP's ten-day retention period. For these reasons, and those discussed more fully below, the Court will deny Plaintiff's motion as to the requested sanctions. The Court will otherwise grant Plaintiff's motion as to the requested withdrawal of his three former motions.

As a threshold matter, the Court notes that it is not clear if Plaintiff seeks sanctions relating to potential camera footage from the SHU shower areas. To the extent that he does, he is simply unable to satisfy his burden of establishing that such evidence actually existed. Defendants assert in their responses to RFP Nos. 3 and 4, and in their opposition, that "due to privacy issues, there were no recordings in the SHU showers." *See* ECF No. 168, at 9 (citing Costanzo Decl., Ex. C). Plaintiff offers no evidence to establish otherwise. Based on the present record, the Court sees no cause to doubt Defendants' representations. As such, Plaintiff cannot establish that any shower area camera footage was "lost." Therefore, the Court finds that Plaintiff fails to establish spoliation of camera footage from the SHU shower areas.

---

*LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498–99 (S.D.N.Y. 2016) (discussing relevant case law and applying a clear and convincing standard), *with Friedman v. Phila. Parking Auth.*, No. 14-6071, 2016 WL 6247470, at *6–7 (E.D. Pa. Mar. 10, 2016) (recognizing the *Cat3, LLC* case and applying a preponderance of the evidence standard). The Court does not have to decide which standard of proof applies, however, since Plaintiff fails to satisfy either burden of proof. *See, e.g.*, *Kavanagh*, 2017 WL 6395848, at *2 n.5.

As for the SHU hallway camera footage, neither party disputes that this evidence was lost. The critical question here is if and when a duty to preserve this evidence arose. Plaintiff alleges that a duty to preserve the SHU hallway camera footage arose "immediately after [the reported] incident." Pl.'s Mot. at 10. Plaintiff claims he provided both the Warden and Assistant Warden with notice "of what happened and that [he] wanted the SHU hallway camera footage saved." *Id.* However, Defendants call into question the authenticity of the purported proofs underlying these claims. *See* ECF No. 195, at 2–3. Defendants note that these "two recently discovered documents" bear no indication that they were received by the BOP. *Id.* at 3; c*ompare* Pl.'s Mot. at 45–46, *with* ECF No. 172-3 (similar forms bearing a case number and stamped with receipt dates). Defendants also note that the allegations raised therein differ substantively from similar documents reflecting Plaintiff's allegations at that time.[3] In light of the foregoing challenge to the authenticity of these two documents and the apparent inconsistencies between them and similar official records on file, the Court finds their value is certainly questionable. Nonetheless, the Court further finds that the authenticity of the documents is not dispositive of the instant issue. Even accepting the documents at face value, the sheer absence of any stamp, marking, or similar notation confirming their receipt renders them useless. The Court notes that the similar forms provided by Defendants bearing such markings appear to indicate that it can take days to even weeks for the documents to be received. *See* ECF No. 172-3, at 2, 4, 6 (showing ten days, three days, and four weeks, respectively, between the date of Plaintiff's signature and official receipt dates). Thus, the two documents offer little to no value in the context of notice and, therefore, the Court will exclude them from its analysis.

---

[3] *See* ECF No. 195, at 3 ("Contrary to the other documents reflecting Plaintiff's allegations during this same period in which he only alleged Officer Tutela stared at him, these two recently discovered documents happen to mirror Plaintiff's later allegations that Officer Tutela purportedly grabbed his genitals.").

8

The Court finds that Plaintiff fails to satisfy his burden of proof in establishing that a duty to preserve arose when he claims. Even under the less stringent standard, Plaintiff fails to establish that Defendants knew or should have known that litigation was reasonably foreseeable. *See, e.g.*, *State Nat'l Ins. Co. v. Cnty. of Camden*, No. 08-5128, 2011 WL 13257149, at *3 (D.N.J. June 30, 2011) (noting that "[t]he duty to preserve evidence attaches when the party in possession of the evidence knows or reasonably should know that litigation is pending or probable"). In the absence of any specific information identifying the SHU hallway as relevant to an incident in the shower, the Court finds that Defendants were without basis to consider the relevance of camera footage from the hallway.[4] The Court further finds that, without any notice of such a connection within the BOP's ten-day retention window, loss of the SHU hallway footage cannot constitute spoliation as a matter of law. Consequently, the Court finds that Plaintiff fails to establish spoliation of the SHU hallway footage.[5] As such, Plaintiff's request for spoliation sanctions pursuant to Rule 37(e) will be denied in its entirety.

### III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **31st** day of **January**, **2024**, that Plaintiff's motion [ECF No. 199] is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Plaintiff's

---

[4] *See, e.g.*, FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment ("Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant. A variety of events may alert a party to the prospect of litigation. Often these events provide only limited information about that prospective litigation, however, so that the scope of information that should be preserved may remain uncertain. It is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed.").

[5] Having already found that spoliation of the SHU hallway camera footage did not occur, the Court further finds that photographs of the SHU hallway are not relevant. Thus, Plaintiff's supplemental request to compel "pictures" of the SHU hallway [ECF No. 200] is **DENIED**.

9

request to withdraw his three former motions [ECF Nos. 151, 180, 193]. The motion is **DENIED** as to Plaintiff's request for spoliation sanctions; and it is further

**ORDERED** that ECF Nos. 151, 180, 193 are **DENIED** as moot.

s/ Sharon A. King  
SHARON A. KING  
United States Magistrate Judge

cc:  Hon. Renée Marie Bumb, Chief Judge