## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
|  | : | CIV. NO. 20-2523 (RMB-SAK) |
|  | : |  |
| IN RE RONALD H. TUTTLE | : | **OPINION** |
|  | : |  |
|  | : |  |

_____

APPEARANCES:

RONALD H. TUTTLE,
316 E. MILLER STREET
ELMIRA, NY 14904
          Plaintiff, pro se

HEATHER CARNEY COSTANZO, Assistant United States Attorney
OFFICE OF THE UNITED STATES ATTORNEY,
DISTRICT OF NEW JERSEY
401 MARKET STREET
P.O. BOX 2098
CAMDEN, NJ 08101
          On behalf of Defendants

RENÉE MARIE BUMB, Chief United States District Judge

This consolidated action arises out of two related cases filed pro se by Plaintiff

Ronald H. Tuttle, based on his allegation of inappropriate sexual conduct by a

correctional officer while Plaintiff was incarcerated in the Federal Correctional

Institution in Fort Dix, New Jersey ("FCI Fort Dix").  The matter is now before the

Court on Defendants' motion for summary judgment (Defs' Mot. for Summ. J., Dkt.

No. 201), Plaintiff's brief in opposition to summary judgment (Pl's Opp. to Defs'

Mot. for Summ. J., Dkt. No. 207); Plaintiff's motion for adverse inference due to

spoliation of evidence (Pl's Motion for Adverse Inference, Dkt. No. 211),

Defendants' Reply Brief (Defs' Reply Brief, Dkt. No. 212), Defendants' opposition to

Plaintiff's motion for adverse inference (Def's Opp. Brief, Dkt. No. 213); and

Plaintiff's reply brief in support of motion for adverse inference (Pl's Reply Brief,

Dkt. No. 214).   The Court will determine the motions on the briefs and record

without oral argument, pursuant to Federal Rule of Civil Procedure 78(b).   For the

reasons discussed below, the Court will deny Plaintiff's motion for adverse inference,

grant Defendant Tutela's motion for summary judgment on Plaintiff's *Bivens* claim,

and deny the Government's motion for summary judgment on Plaintiff's FTCA

claim.

## I.   PROCEDURAL HISTORY

### A.   Exhaustion of Administrative Remedies

The following facts are undisputed.   Plaintiff exhausted the administrative

remedies available to him in FCI Fort Dix[1] for his *Bivens*[2] claim for the alleged sexual

assault by Corrections Officer Eric Tutela ("Tutela")[3] on April 23, 2020.

---

[1] BOP Administrative Remedy Program, 20 C.F.R. § 542.10 *et seq.*  Exhaustion of a prison's available administrative remedies is required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (implying a damages remedy for Fourteenth Amendment unreasonable search and seizure claim against federal employee).

[3] The spelling of Defendant's name has been corrected from "Tuttela," as it was spelled in the complaint, to "Tutela."

(Defendants' Statement of Material Facts Not in Dispute under Local Civil Rule 56.1 ("Defs' SOF") ¶ 33, Dkt. No. 201-2; Declaration of Corrie Dobovich ¶ 5, Dkt. No. 172; Ex. 3, Dkt. No. 172-3.)  Subsequently, on August 30, 2019, the Bureau of Prisons ("BOP") received an administrative tort claim from Plaintiff, as required by the Federal Tort Claims Act ("FTCA") , 28 U.S.C. § 2675, prior to filing an FTCA claim under § 1346(b) in a district court.  (*Id.* ¶ 15; Ex. 4, Dkt. No. 172-4.)  BOP denied Plaintiff's administrative tort claim on February 28, 2020, citing the lack of any supporting evidence.  (*Id.* ¶ 18., Ex. 4, Dkt. No. 172-4 at 8.)

### B.    Plaintiff's Complaints

Plaintiff filed a complaint containing an FTCA claim against the United States on March 9, 2020, based on an alleged sexual assault by Tutela.  (*Id.* ¶ 32.)  Three months later, on June 12, 2020, Plaintiff filed a *Bivens* complaint against Tutela, alleging an Eighth Amendment violation for the same incident.  (Defs' SOF ¶ 34, Dkt. No. 201-2.)  The Court consolidated the actions on April 7, 2022.  (*Id.* ¶ 35.)  In both complaints, Plaintiff alleged that on the morning of Sunday, December 16, 2018, in a shower stall in the Special Housing Unit ("SHU") in FCI Fort Dix, Tutela reached into the shower stall and grabbed Plaintiff's genitals pulling as hard as he could and ripping out a handful of hair.  (Civil Action No. 20-2523, FTCA Compl., Dkt. No. 1; Civil Action No. 20-2523, Bivens Compl., Dkt. No. 1.) Tutela then stared at Plaintiff's genitals.  Officer Rayfield and Inmate Walter Emery stared in amazement.  Tutela made a sexual comment about Officer Rayfield, who yelled for Tutela to leave.  Plaintiff suffered excruciating pain, difficulty urinating and erectile

dysfunction.  The incident caused him fear, trauma, recurring nightmares, cold sweats and lack of sleep.

### C.    Discovery

Plaintiff was appointed pro bono counsel for limited discovery purposes on November 15, 2022.  (Order, Dkt. No. 102.)  Pro bono counsel withdrew representation by Order dated January 17, 2023.  (Order, Dkt No. 120.)  Plaintiff then filed a series of motions seeking sanctions for spoliation of evidence.  (Motions, Dkt. No. 180, 187, 199, 200.)  Defendants filed a motion for summary judgment on November 1, 2023.  (Def's Mot. for Summ. J., Dkt. No. 201.)  On January 31, 2024, the Honorable Magistrate Judge Sharon A. King found that Plaintiff failed to establish spoliation of evidence and denied Plaintiff's motion for sanctions.  (Opinion and Order, Dkt. No. 205.)  Plaintiff filed his latest motion for adverse inference due to spoliation of evidence on March 26, 2024.  (Pl's Mot. for Adverse Inference, Dkt. No. 211.)

## II.    Plaintiff's Motion for Adverse Inference

### A.    The Parties' Arguments

After filing his brief in opposition to Defendants' motion for summary judgment, Plaintiff filed a motion for adverse inference due to spoliation of evidence, seeking relief of default judgment in his favor.  Plaintiff summarized his claim for relief as follows:

> I ask for spoliation sanction of default because the
> Defendants covered up a violent sexual assault upon me

> by failing on purpose the PREA[4] investigation which
> resulted in me not being able to[:]  1 not being able to
> obtain other witnesses to state C.O. Tutela worked on date
> of incident[;] 2 have video tape evidence that would have
> proved that (a) CO Tutela worked the date of incident[;]
> (b) C.O. Tutela sexually assaulte[d] me.

(Dkt. No. 211 at 1) (alterations added).

Plaintiff also included a "closing argument" in his motion:

> There is no other reason to not do interview of person that
> sexually assaulted me until nearly three years later other
> than to cover up violent sexual assault on me by stating he
> did not work.  What other reason could any normal mind
> come to the conclusion of under circumstances.  Not
> interviewing for that matter anyone associated or had
> knowledge of incident until nearly three years later.  Again
> there is no reasonable explanation for it other than to
> cover up the violent sexual assault that occurred to me by
> trying to make it look like Tutela did not work on date of
> incident and provide me with no way to prove he did.

(*Id.* at 20-21.)

Defendants filed a brief in opposition to Plaintiff's motion for sanctions.

(Defs' Opp. Brief, Dkt. No. 213.)  Defendants submit that Plaintiff's arguments are

repetitive of his prior motions, which Magistrate Judge King denied in her January

21, 2024 opinion.  (*Id.* at 1-2.)  Defendants characterize Plaintiff's present motion as

a motion for reconsideration under Local Civil Rule 7.1(i).  (*Id.* at 2.)  Under the

local rule, Plaintiff's motion, which was required to be filed within 14 days of the

challenged order, is untimely.  (*Id.*)  Even if the Court addresses Plaintiff's untimely

motion, Defendants submit Plaintiff merely reiterates his prior arguments.  (*Id.*,

---

[4] Prison Rape Elimination Act, 34 U.S.C. § 30302 *et seq.*

citing Dkt. Nos. 199, 200.)  Defendants contend reconsideration is not appropriate where a party merely disagrees with the Court's initial decision.  (*Id.* at 3.)

Defendants also maintain that the Court should not deem Plaintiff's motion as an appeal of Magistrate Judge King's opinion because Plaintiff did not follow the procedures in Local Civil Rule 72.1(c)(1)(A) for appealing a Magistrate Judge's ruling on a non-dispositive motion.  (Defs' Opp. Brief, Dkt. No. 213 at 4.)  Plaintiff's motion is well beyond the 14-day period to appeal.  (*Id.*)  Moreover, Defendants argue that Plaintiff has not met the requisite standard for relief; he failed to show Magistrate Judge King's opinion was clearly erroneous or contrary to law.  (*Id.*)

Finally, Defendants note Plaintiff appears to raise a new argument that Defendants failed to interview fellow inmates at the time of the assault.  (*Id.* at 5.)  Defendants contend it was Plaintiff's responsibility to obtain statements from inmate witnesses in support of his tort claim and civil rights action.  Plaintiff also had the opportunity to identify, in his responses to interrogatories, any witnesses whose depositions he wished to take in discovery.  Plaintiff only deposed his former cellmate.  Defendants submit that "BOP's investigatory timeline followed the path it did in terms of what it investigated and when because Plaintiff's story of the events changed."  (*Id.* at 6.)

Plaintiff filed a reply brief.  (Pl's Reply Brief, Dkt. No. 214.)  Plaintiff argues that his motion is not an appeal of Magistrate Judge King's opinion, rather, a motion based on new evidence.  (*Id.* at 1.)  Plaintiff explains:

> Clearly I show by BOP policy in new motion that
> investigator was supposed to do "timely" interviews after a
> "PREA" is alleg[]ed[].  I show that the investigator waited
> nearly 3 years to do interview of CO Tutela and "only then
> for 1st time is it ever state by BOP or Tutela that Tutela
> did not work this is 3 years later" this is not timely and this
> is "complete injustice" and "facts" showing that this needs
> to be "corrected" as a fact and that it "manifested the
> injustice of me asking any other inmate at Fort Dix for a
> statement stating Tutela worked that day."

(Pl's Reply Brief, Dkt. No. 214 at 3) (alteration added).  Plaintiff also responded to

the argument that he should have taken depositions or statements from other

witnesses at the time of the incident:

> This is pr[e]posterous because why would I ever need to
> take statements from other witnesses other th[a]n Walter
> Emery that was only person who was there at the event in
> question, there was no reason whatsoever to have taken
> statements from other witnesses.

(*Id.* at 3-4) (alterations added).

## B.    DISCUSSION

Plaintiff's motion for adverse inference asserts it is not a motion for

reconsideration or an appeal of Magistrate Judge King's opinion.  Instead, Plaintiff

claims it is a motion based on new evidence.  It is not clear what evidence was newly

discovered, but, regardless of the procedural irregularity, the Court will address the

merits of the motion.

"Spoliation occurs where:  the evidence was in the party's control; the

evidence is relevant to the claims or defenses in the case; there has been actual

suppression or withholding of evidence; and, the duty to preserve the evidence was

reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).  The Court construes Plaintiff's motion to assert that the intentional delay by BOP and FCI Fort Dix to investigate his claim resulted in a loss of evidence.  The Court will not reconsider Magistrate Judge King's opinion regarding video footage of the SHU shower hallway.

First, the intended purpose of a PREA investigation is not to obtain and preserve evidence for the complaining inmate to file a lawsuit.  *See* 34 U.S.C. § 30302 (purposes of PREA).  It is a pro se plaintiff's obligation to present sufficient evidence to withstand a motion for summary judgment by the Defendants and ultimately prove his claim.  *Tinsley v. Main*, No. CV 15-7319(MCA), 2020 WL 4382278, at *10 (D.N.J. July 31, 2020), *aff'd*, No. 20-2846, 2021 WL 2853152 (3d Cir. July 8, 2021) (citations omitted).

Additionally, the record supports Defendants' argument that there was nothing nefarious about the timing of Lieutenant Fernandez's investigation.  The PREA investigation began on December 21, 2018, when Plaintiff submitted a note to Special Investigations Services ("SIS") staff at FCI Fort Dix.  (Declaration of Michael Fernandez "Fernandez Decl." Dkt. No. 170; Ex. 2, Dkt. No. 171-1 at 2; Ex. 6, Dkt. No. 171-5 at 1.)  Plaintiff was immediately interviewed by an SIS investigating officer.  (Ex. 2, Dkt. No. 171-1 at 1.)  Plaintiff told the SIS investigator that while he was showering in the SHU on December 16, 2018, Tutela grabbed Plaintiff's towel and clothing, revealing his genitals.  (*Id.*)  Tutela stared at Plaintiff's

genitals and made a sexual comment about Officer Rayfield to him.  (*Id.*)  Plaintiff

reported that the incident was witnessed by his cellmate, Walter Emery.  (*Id.*)

Plaintiff did not identify any other staff or inmate witnesses.  (*Id.*)

SIS Services referred Plaintiff to a BOP psychologist to discuss the incident.

(Fernandez Decl., Ex. 6, Dkt. No. 171-5 at 1.)  On December 21, 2018, the

psychologist reported:

> [Plaintiff alleged that on December 16, 2018 after he was
> finished showering in the SHU, Officer [Tutela] allegedly
> took inmate [Plaintiff's] clothing and grabbed [Plaintiff's]
> towel out of [his] hand revealing [Plaintiff's] genitalia.
> [Plaintiff] then alleged that [Tutela] stood in front of him
> and "stared" at his genitalia for approximately 'one minute
> and thirty seconds,' after which, [Plaintiff] alleged [Tutela]
> stated, "Officer [Rayfield] loves the cock." . . . Plaintiff also
> alleged that another inmate in SHU [Emery] who had also
> just finished showering witnessed this alleged event.
> . . .
> [Plaintiff] indicated that he "felt safe" in SHU, he shows no
> indication that would require his "at risk" level be raised
> significantly above any other inmate's.

(*Id.* at 1-2) (alterations added).

As part of the initial PREA investigation, Plaintiff was also sent to Health

Services for an injury assessment.  (Fernandez Decl., Ex. 7, Dkt. No. 171-6 at 1-4.)

Plaintiff reported that a staff member ripped the towel from his hands and stared

through the "bean hole" of the shower for a minute at Plaintiff who was naked.

Plaintiff said that everyone around the shower area at that time saw him naked.

Plaintiff "denied any physical contact with the staff member, so he said he has no

physical injuries." Upon physical examination, Plaintiff did not appear to be in any physical distress.

Plaintiff next reported this incident to the Department of Justice, Office of Inspector General, in a letter/affidavit dated January 20, 2019, which was also signed by his cellmate, Walter Emery. (Fernandez Decl., Ex. 8, Dkt. No. 171-7 at 1-27.) Much of the letter was about the reasons Plaintiff and Emery were in protective custody in the SHU, not about the shower incident. Regarding the shower incident, Plaintiff wrote, "[w]hile in this SHU I've had a towel ripped out of my hands in a shower by Officer Tutela and he staired [sic] at my genitalia — That's clearly a sexual assault and I reported this PREA incident…." Plaintiff alleged that Officer Rayfield and Inmate Walter Emery witnessed the incident. Plaintiff further alleged that Tutela had stared at other naked inmates and made sexual comments to them in the past. Plaintiff argued, "[t]here should be no excuse for Tutela's actions of 'ripping away towel' and staring at my genitalia and allowing other inmates to stare also while he verbally abused Officer Rayfield." (*Id.* at 8) (internal quotation in original).

On February 25, 2019, via an email through TRULINCS to the Department of Justice, Office of the Inspector General ("OIG"), Plaintiff wrote

> I … want charges of assault filed against officer tutela for grabbing towel out of my hands through been [sic] hole in door of shower and pulled my penis and pube hairs at the same time then stood there stairing [sic] at my genitalia for minute and half then said Rayfield loves the cock once he realized officer rayfield was stairing [sic] at this incident and so was my cellmate walter emery. … I am

10

> traumatized by this event to point of night terrors cant [sic]
> sleep and night sweats and am emotionally destraught [sic]
> since event occurred [sic]….

(Fernandez Decl. ¶ 1; Ex. 9, Dkt. No. 171-8.)

On April 16, 2019, the BOP Office of Internal Affairs granted FCI Fort Dix permission to conduct a local investigation.  (Fernandez Decl., Ex. 2, Dkt. No. 171-1 at 1-3.)  Lieutenant Michael Fernandez at FCI Fort Dix reviewed Plaintiff's May 19, 2021 affidavit in support of his claim.  (Ex. 3, Dkt. No. 171-2 at 1-19).  Lieutenant Fernandez noted that Inmate Walter Emery was released from BOP custody on August 2, 2019, and could not be reached to provide a statement.

Lieutenant Fernandez also interviewed Special Investigative Agent Sean Nolan, who described the December 21, 2018 SIS investigation of Plaintiff's allegations.  (Ex. 2 and Ex. 3, Dkt. No. 171-2 at 4-6.)  Lieutenant Fernandez interviewed Psychologist Courtney Mills, who provided a "Sexual Abuse Intervention" for Plaintiff on December 21, 2018.  (Ex 2 and Ex. 3, Dkt. No. 171-2 at 7-10).  He also interviewed Senior Officer Specialist Jimmy Rayfield, who denied witnessing the alleged sexual assault on December 16, 2018.  (Ex. 2 and Ex. 3, Dkt. No. 171-2 at 11-14).  Finally, on May 26, 2021, Lieutenant Fernandez interviewed Materials Handler Supervisor Eric Tutela, who denied working on December 16, 2018, and denied all of Plaintiff's allegations.  (Ex. 2 and Ex. 3, Dkt. No. 171-2 at 15-19.)  Each of these witnesses provided an affidavit for the investigation.  After concluding the investigation, Lieutenant Fernandez found Plaintiff's allegations were

not substantiated.  (Ex. 2, Dkt. No. 171-1 at 4-5.)  In the end, there is nothing in the record to support Plaintiff's accusation that FCI Fort Dix or BOP staff suppressed or withheld evidence in conducting the PREA investigation of his complaint.  *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 466 (E.D. Pa. 2020)  (quoting *Bull*, 665 F.3d at 79) ("a finding of bad faith is pivotal to a spoliation determination.")

Moreover, Plaintiff asserted in his brief in opposition to Defendants' motion for summary judgment, "both Rayfield statement and mine and emery[']s statement are more than enough circumstantial evidence to prove Tutela sexually assaulted me and enough to argue these facts at trial."  (Pl's Opp. to Defs' Mot. for Summ. J., Dkt. No. 207 at 26.)  Plaintiff attached these statements as exhibits to his brief.  He also attached to his brief portions of his deposition transcript and Walter Emery's deposition transcript, both stating Tutela escorted them to the shower on Sunday, December 16, 2018.  (Dkt. No. 207-1 at 30-40, 60-63; 207-2 at 1-2.)  Despite Plaintiff's assertion, in his motion for adverse inference, that he has no evidence Tutela worked on December 16, 2018, he says the opposite in his brief in opposition to Defendant's motion for summary judgment.  For these reasons, Plaintiff's motion for adverse inference is denied.

### III.    Defendants' Motion for Summary Judgment and Plaintiff's Opposition

Defendants submitted the following statement of material facts not in dispute ("SOF") in support of their motion for summary judgment on Plaintiff's *Bivens* and FTCA complaints:

1. At all times relevant to the allegations in the complaints in this consolidated action, Plaintiff Ronald Tuttle was an inmate at Federal Correctional Institution ("FCI") Fort Dix. Compl., ECF No. 1 in No. 20-cv-02523; ECF No. 1 in No. 20-cv-07192.

2. Plaintiff was at FCI Fort Dix from May 2018 through January 23, 2019. Declaration of Heather Costanzo ("Costanzo Decl."), Ex. A (excerpts from June 16, 2023 deposition of Plaintiff ("Plf. Dep.")) at 49:11-15.

3. Plaintiff resided in the Special Housing Unit ("SHU") at FCI Fort Dix in December 2018. Plf. Dep. at 60:20-23.

4. Plaintiff was born in April, 1970. Plf. Dep. at 10:15-16.

5. On December 21, 2018, Plaintiff reported to staff at FCI Fort Dix that Officer Eric Tutela allegedly stared at his genitals on December 16, 2018, while Plaintiff was in an FCI Fort Dix SHU shower. ECF No. 170, Declaration of M. Fernandez ("Fernandez Decl."), ¶ 10; ECF No. 171,1 Ex. 2 to Fernandez Decl. at 2; Ex. 3 at USA_000613 ¶ 6.

6. FCI Fort Dix staff immediately referred Plaintiff to health and psychology services for assessments and Special Investigations Services ("SIS") interviewed Plaintiff. See Fernandez Decl., Ex. 3 at USA_000613 ¶ 7; Ex. 6; Ex. 7.

7. Plaintiff reported to SIS that on December 16, 2018, while Plaintiff was in the SHU showers, Officer Tutela ripped the towel and clothing Plaintiff was holding out of his hands, revealing his genitals, and that Officer Tutela stared at his genitals, laughed, and said "Rayfield loves the cock." Fernandez Decl., Ex. 2 at USA_000605; Ex. 3 at USA_000613.

8. On December 21, 2018, Plaintiff reported to a BOP psychologist that on December 16, 2018, Officer Tutela "took [Plaintiff's] clothing and grabbed [his] towel out of [Plaintiff's] hand revealing [Plaintiff's] genitalia," stared at Plaintiff's genitals for approximately "one minute and thirty seconds," and that Officer Tutela then said that another officer "loves the cock." Fernandez Decl., Ex. 6

13

at USA_00028.

9. On December 21, 2018, Plaintiff reported to BOP Health Services that on December 16, 2018, Officer Tutela ripped a towel from his hands while Plaintiff was naked and stared at Plaintiff's genitalia for a minute and a half through an opening in the shower cell door. *Id.*, Ex. 7.

10. BOP Health Services staff did not observe any physical injuries during the December 21, 2018 examination of Plaintiff. *Id.*

11. During the examination, Plaintiff denied any physical contact and physical injuries. *Id.* at USA_00030.

12. Plaintiff wrote a letter, dated January 20, 2019, to the Department of Justice Office of Inspector General again alleging that on December 16, 2018, Officer Tutela ripped a towel out of his hands while Tuttle was in the shower and stared at his genitalia. Fernandez Decl., Ex. 8.

13. In that letter, Plaintiff did not allege any physical contact by or physical injury from Officer Tutela. *Id.* at USA_000633.

14. On February 25, 2019, Plaintiff wrote an email alleging that Officer Tutela grabbed his towel out of his hands through a hole in the shower cell door and pulled his penis and pubic hairs. Fernandez Decl., Ex. 9.

15. On August 30, 2019, BOP received an administrative tort claim from Plaintiff. Declaration of Corrie Dobovich ("Dobovich Decl."), ECF No. 172-4.

16. In his administrative tort claim, Plaintiff alleges that while he was naked in a shower stall in the FCI Fort Dix SHU on December 16, 2018, Officer Tutela reached into the stall, ripped a towel away from Plaintiff's genitals, pulled on his penis, ripped pubic hair off of Plaintiff's body, stared at Plaintiff's genitals, and yelled that "[Officer] Rayfield loves the cock." *Id.*

17. Plaintiff did not allege negligence on the part of any other FCI Fort Dix staff. *Id.*

18. BOP denied Plaintiff's administrative tort claim on February 28, 2020, finding that the claim was unsubstantiated. *Id.*

19. On April 16, 2019, the Office of Internal Affairs granted FCI Fort Dix permission to conduct a local investigation. Fernandez Decl., Ex. 2 at 1.

20. Lieutenant Michael Fernandez investigated the claims. Fernandez Decl. ¶ 10.

21. Plaintiff testified in an affidavit during the internal investigation that on December 16, 2018, Officer Tutela grabbed and pulled on Plaintiff's penis while he was in an FCI Fort Dix SHU shower. Fernandez Decl., Ex. 3 at USA_000609-10.

22. As was reported in Lieutenant Fernandez's investigatory summary, BOP records show that Officer Tutela did not work at FCI Fort Dix on December 16, 2018. Fernandez Decl., ¶¶ 12-13, Exs. 4-5.

23. Officer Tutela has denied Plaintiff's allegations under oath. Fernandez Decl., Ex. 3 at USA_000623-627.

24. Officer Jimmy Rayfield testified in the BOP investigation that he never witnessed Officer Tutela grab an inmate's penis and pull on it. Fernandez Decl., Ex. 3 at USA_000619-622 (Rayfield affidavit), ¶ 9.

25. Officer Rayfield testified in the BOP investigation that he never witnessed Officer Tutela stare at any inmate's genitals. *Id.* ¶ 11.

26. Officer Rayfield testified in the BOP investigation that he never witnessed Officer Tutela say to an inmate "Rayfield loves the cock." *Id.* ¶ 12.

27. Officer Rayfield testified in the BOP investigation that he never witnessed Officer Tutela grab a towel or clothing from an inmate in the SHU showers. *Id.* ¶ 10.

28. Officer Rayfield testified in this action that he never witnessed Officer Tutela grab Plaintiff's penis and pull on it. ECF No. 169-1, Ex. A (Dec. 1, 2022 Deposition of Jimmy Rayfield ("Rayfield Dep.")) at No. 12, 18, 19.

29. Officer Rayfield testified he has never signed an affidavit for Plaintiff. Rayfield Dep. at Nos. 1, 17, 18.

30. For privacy reasons, the FCI Fort Dix SHU shower doors have a white hard covering running from approximately neck level to shin level (depending on the height of the inmate). Rayfield Dep. at No. 12(c). *See also* ECF No. 170, Fernandez Decl. ¶ 18, Ex. 10 (SHU shower photos).

31. Following an investigation, Lieutenant Michael Fernandez concluded Plaintiff's claims were unsubstantiated. Fernandez Decl. ¶ 10, Ex. 2 at 5.

32. On March 9, 2020, Plaintiff filed an FTCA claim against the United States, alleging that Officer Tutela grabbed Plaintiff's penis while he was in the FCI Fort Dix SHU shower on December 16, 2018. ECF No. 1-2 at 3 in [Civil Action] No. 20-cv-02523.

33. On April 23, 2020, Plaintiff exhausted his administrative remedies with BOP. Dobovich Decl., ECF No. 172, ¶ 5, Ex. 3.

34. On June 12, 2020, Plaintiff filed a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) alleging that Officer Tutela violated his Eighth Amendment rights on December 16, 2018. ECF No. 1 at 4 in [Civil Action] No. 20-cv-07192.

35. The Court consolidated the actions on April 7, 2022. ECF No. 68 in [Civil Action] No. 20-02523.

36. Walter Emery was formerly an inmate at FCI Fort Dix and was Plaintiff's friend and cellmate in the SHU. Costanzo Decl., Ex. B, (excerpts from Jan. 9, 2023 Deposition of Walter Emery ("Emery Dep.")) at 37:7-20.

37. Emery was released from federal custody on August 2, 2019.  https://www.bop.gov/inmateloc/ (last visited on November 1, 2023).

38. Emery did not witness Officer Tutela grab Plaintiff's genitals.  Emery Dep. at 40:24-41:19.

39. Plaintiff claims his genital area was swollen and he had difficulty urinating for two weeks from December 16, 2018.  Plf Dep. at 167:22-168:8; 168:18-170:9.

40. He also claims he had night sweats and nightmares thinking about the incident. Plf Dep. at 168:12-17.

41. Plaintiff claims he still experiences erectile dysfunction and night terrors.  Plf. Dep. at 296:12-299:17.

42. Plaintiff has not sought any treatment for erectile dysfunction.  Plf. Dep. at 300:8-303:14.

In the opening paragraph of Plaintiff's brief in opposition to Defendants' motion for summary judgment, Plaintiff states:

This is a PREA pre[c]edent case where BOP failed horribly to investigate PREA and this is exactly how I am starting this argument and ending this argument and facts are as follows that support spoliation sanction of default.

(Pl's Opp. to Defs' Mot. for Summ. J., Dkt. No. 207 at 1.)  The core of Plaintiff's opposition is that he lacks evidence to defeat Defendants' motion for summary judgment because BOP conducted an inadequate investigation into his PREA complaint, producing little evidence to support his allegation of sexual assault by

Tutela.  Therefore, Plaintiff seeks default judgment as a sanction for spoliation of evidence in this matter.

Defendants, in their reply brief, argue that this Court should reject Plaintiff's effort to rehash his claims of spoliation of evidence.  (Def's Reply Brief, Dkt. No. 212.)  Defendants argue that because Plaintiff failed to submit a responsive statement of material facts, as required by Local Civil Rule 56.1(a), the Court should treat Defendants' statement of material facts as undisputed.  Moreover, Plaintiff did not respond to Defendants' argument that the Court should not imply a *Bivens* damages remedy, and he did not present any evidence that could defeat Defendants' motion for summary judgment on his FTCA claim.

### A.   Summary Judgment Standard of Law and Plaintiff's Failure to Comply with Local Civil Rule

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[.]  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be … disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1)(A).  In opposition to summary judgment, a nonmoving party who is asserting that a fact is genuinely disputed must support the assertion by

> (B) showing that the materials cited do not establish the absence … of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(B).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Affidavits or declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

If a party fails to support an assertion of fact "or fails to properly address another party's assertion of fact[,]"  the court, in determining the summary judgment motion, has the option of:  (1) giving the party an opportunity to support or address the fact; (2) considering the fact undisputed; (3) granting summary judgment if the moving party's materials show it is entitled to summary judgment; and (4) "issue any other appropriate order."  Fed. R. Civ. P. 56(e)(1-4.)  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial."  *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In determining whether a genuine dispute of any material fact exists, the court must draw all facts and inferences in favor of the non-moving party.  *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 925 (3d Cir. 2011). A court should grant summary judgment "if, under the governing law,

there can be but one reasonable conclusion as to the verdict." *Id.* at 564 (quoting
A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

District of New Jersey Local Civil Rule 56.1(a) sets forth procedural
requirements for responding to a motion for summary judgment.  It provides, in
relevant part:

> The opponent of summary judgment shall furnish,
> with its opposition papers, a responsive statement of
> material facts, addressing each paragraph of the movant's
> statement, indicating agreement or disagreement and, if
> not agreed, stating each material fact in dispute and citing
> to the affidavits and other documents submitted in
> connection with the motion; any material fact not disputed
> shall be deemed undisputed for purposes of the summary
> judgment motion. In addition, the opponent may also
> furnish a supplemental statement of disputed material
> facts, in separately numbered paragraphs citing to the
> affidavits and other documents submitted in connection
> with the motion, if necessary to substantiate the factual
> basis for opposition.

Plaintiff did not meet his obligation Local Civil Rule 56.1(a).  Despite this procedural
failure, the Court has carefully reviewed Plaintiff's brief in opposition to Defendants'
motion for summary judgment and attached exhibits, and finds that Plaintiff has
responded to some of the factual issues raised by Defendants.  Therefore, the Court
will determine the motion for summary judgment on the merits.

## B. *Bivens* Claim

Plaintiff seeks damages against Tutela, in his personal capacity, for an alleged
sexual assault against Plaintiff at FCI Fort Dix on December 16, 2018, in violation of
the Eighth Amendment.  Defendants contend this *Bivens* claim arises in a new *Bivens*

context, and special factors counsel hesitation in implying a judicial damages remedy where Congress has not.  (Defs' Brief, Dkt. No. 201-1 at 19-31.)  Defendants point to the following factors:  (1) Congress has declined to create a damages remedy for claims of sexual abuse despite extensively legislating in this area through the Prison Rape Elimination Act, 42 U.S.C. §§ 15601-15609; (2) alternate remedies are available to Plaintiff, including the BOP administrative remedy program, injunctive relief, damages under the FTCA, and investigation of misconduct under the Investigator General Act of 1978, 5 U.S.C. App. 3, § 8E (d); and (3) the systemwide costs imposed by a damages remedy against federal employees, and the harmful effects it would have on the discharge of officials' duties in the prison context.  (*Id.*)  Plaintiff did not respond to the issue of whether the *Bivens* context is new or whether special factors counsel hesitation for the Court to imply a damages remedy.  (Pl's Opp. to Defs' Mot. for Summ. J., Dkt. No. 207.)

### 1.    The Two-Step Framework for Implying a Damages Remedy against a Federal Actor for a Constitutional Violation

The Supreme Court has instructed that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).  When presented with a proposed *Bivens* claim, courts must follow a two-step analysis. *Egbert v. Boule*, 596 U.S. 482, 492 (2022).  First, courts must determine "whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action.  *Id.* (quoting *Abbasi*, 582 U. S. at 139.))  If the case presents a new context, courts must determine that "a

*Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* (quoting *Abbasi*, 582 U. S. at 136 (internal quotation marks omitted in original)).  Courts may not recognize a new *Bivens* remedy if there is even a single reason counseling hesitation.  *Id.*

The Supreme Court has only recognized a damages remedy against federal employees for alleged constitutional violations in three cases:  (1) *Bivens*,[5] a Fourth Amendment unreasonable search and seizure claim based on the warrantless search of the claimant's home by federal narcotics agents, and his arrest on narcotics charges without probable cause; (2) *Davis v. Passman*, 442 U.S. 228 (1979), a Fifth Amendment equal protection claim against a Congressman for gender discrimination in the workplace; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), an Eighth Amendment claim against federal prison officials for failing to provide emergency medical care to treat an inmate's life-threatening asthma.  *Id.* at 130-31.  "Unless the Supreme Court has recognized the context before, the context is 'new' and a special factors inquiry is required to determine if *Bivens* expansion is appropriate."  *Mack v. Yost*, 968 F.3d 311, 319 (3d Cir. 2020).

Under the second step of the analytical framework, "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  *Abbasi*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S.

---

[5] *Supra* note 2.

at 18 (quoting *Bivens*, 403 U.S. at 396)).  Under this step, courts must consider

"whether the Judiciary is well suited, absent congressional action or instruction, to

consider and weigh the costs and benefits of allowing a damages action to proceed."

*Id.*  The two steps "often resolve to a single question: whether there is any reason to

think that Congress might be better equipped to create a damages remedy." *Egbert*,

596 U.S. at 482 (emphasis added).  Tellingly, the Supreme Court acknowledged that

if it "were called to decide *Bivens* today, [it] would decline to discover any implied

causes of action in the Constitution."  *Id.* at 502.  The Court advised that "in all but

the most unusual circumstances, prescribing a cause of action is a job for Congress,

not the courts[.]"  *Id.* at 486.

### a.  Whether Plaintiff's Claim Presents a New *Bivens* Context?

Plaintiff alleges a correctional officer violated the Eighth Amendment by

sexually assaulting him at a federal correctional institution.  "A claim may arise in a

new context even if it is based on the same constitutional provision as a claim in a

case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589

U.S. 93, 103 (2020).  The Supreme Court previously implied a damages remedy for

an Eighth Amendment claim in *Carlson*, where the plaintiff alleged prison officials

failed to provide emergency medical treatment to an inmate, who then died from an

asthma attack.  The facts in *Carlson* bear little relation to an alleged sexual assault by

a prison guard against an inmate.  The alleged sexual assault here is also

meaningfully different from the gender discrimination claim in an employment

context in *Davis*, where the plaintiff alleged wrongful termination, not sexual assault. Therefore, Plaintiff's claim arises in a new *Bivens* context, and the Court must turn to the special factors analysis.

### b. Whether Special Factors Counsel Hesitation in Implying a Damages Remedy?

The Supreme Court has instructed that if "there is any reason to think that Congress might be better equipped to create a damages remedy[,]" in a new *Bivens* context, courts should not imply a damages remedy. *Egbert*, 596 U.S. at 492. A court need only identify one reason to believe Congress might be better equipped to create a damages remedy. "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U. S. at 137). The only question is whether Congress or the Judiciary should decide whether to impose a damages remedy, not whether a damages remedy would disrupt another remedial scheme, whether another remedial scheme provides complete relief, or even whether a wrong would otherwise go unaddressed. *Id.*

### 2. Analysis

The analysis here is straightforward. Plaintiff has invoked several remedies available to protect his right under the Eighth Amendment to be free from sexual assault by a correctional officer in a federal prison. First, Plaintiff invoked the BOP administrative remedy program. *See Mack*, 968 F.3d at 321 (finding that the BOP's administrative remedy program was reason to refrain from creating a new damages

remedy against federal prison officials).  Second, under PREA, Congress sought to "increase the accountability of prison officials" and "protect the Eighth Amendment rights of Federal, State, and local prisoners" from sexual assault.  34 U.S.C. § 30302(6)-(7). Thus, Congress instructed the Attorney General to develop and promulgate national standards for preventing, investigating, and punishing prison sexual assault.  34 U.S.C. § 30307(a)(1)-(3).  Congress "pass[ed] comprehensive legislation aimed at a zero tolerance policy for prison rape, [but it] opted not to include a private right of action for damages under PREA." *Freedland v. Mattingly*, No. 1:20-CV-00081, 2021 WL 1017253, at *9 (M.D. Pa. Mar. 17, 2021) (internal citations and quotations omitted).  "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation," *Abbasi*, 582 U.S. at 148.  Hence, Congress' enactment of PREA is sufficient reason to decline to imply a *Bivens* damages remedy here.  The Court, however, notes the existence of additional remedies available to Plaintiff.

In addition to PREA, Plaintiff pursued an FTCA damages claim and an OIG investigation of his allegation against Tutela.  *See Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1359 (10th Cir. 2024) (holding existence of OIG investigation procedure was an adequate remedy that counseled hesitation in implying a damages remedy in a new *Bivens* context.)

Plaintiff contends BOP staff failed to comply with FCI Fort Dix's PREA regulations, policies and procedures.  However, an alternative remedy "need not provide an individual with complete relief in order to foreclose a damages remedy

under *Bivens*." *Mack*, 968 F.3d at 320 (emphasis in original). An alternative remedy need not afford an individual the right to participate in or appeal the process. *Egbert*, 596 U.S. at 497-98. "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* at 493 (internal quotations and citations omitted). Recognizing any new *Bivens* action "'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Egbert*, 596 U.S. at 499 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The Court explained:

> [s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are "not as effective as an individual damages remedy."

596 U.S. at 498 (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)). Therefore, the Court declines to imply a damages remedy here.

## C.   FTCA Claim

The United States may be liable under the FTCA for

> (1) personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant

in accordance with the law of the place where the act or omission occurred.

(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

28 U.S.C. § 1346(b) (1, 2).  Sexual act is defined as

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246 (2)(A-D).

Only subparagraph (D) is applicable here.  Plaintiff was 48 years old at the time of the alleged incident. (Defs' SOF ¶ 4, Dkt. No. 201-2.)  Therefore, Plaintiff's allegations do not meet the criteria for a sexual act.  That is not the end of the discussion because courts must liberally construe *pro se* complaints.  *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007).  Therefore, the Court will construe Plaintiff's FTCA claim as alleging Tutela committed the New Jersey common law tort of battery.

In New Jersey, "a battery claim may be asserted based on 'any nonconsensual touching' and does not require intent to injure."  *Bove v. AkPharma Inc.*, 213 A.3d 948, 960 (App. Div. 2019) (*Perna v. Pirozzi*, 457 A.2d 431 (N. J. 1983)); *accord* ("[t]he tort of battery rests upon a nonconsensual touching."  *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009).  Under New Jersey law, even if the nonconsensual touching is harmless, nominal damages are available.  *Perna*, 457 A.2d at 438 (1983).  Before turning to PLRA prerequisite of a physical injury before Plaintiff can seek compensatory damages for mental and emotional injury under the FTCA,  the Court will consider whether a genuine issue of disputed fact exists on the battery Plaintiff alleges.

Plaintiff alleges the battery occurred on December 16, 2018, not any other day.  Defendants have submitted records showing:  (1) Tutela was off on Sundays during the last quarter of 2018; (2) Tutela's name appears under the heading "day off" on the relevant FCI Fort Dix staff assignment roster for that day; and (3) Tutela testified in his deposition that he had Sundays off in that time period, and he denied all of Plaintiff's accusations.

Although it is two paragraphs of Plaintiff's brief in opposition to summary judgment (Dkt. No. 2017 a 26), Plaintiff asserts he has sufficient evidence to create a genuine issue of fact on whether Tutela worked at FCI Fort Dix on December 16, 2018, and that the alleged battery occurred.  Plaintiff also attached to his opposition

brief portions of his deposition transcript, his cellmate Walter Emery's deposition transcript, and statements signed by Walter Emery and Officer Rayfield, confirming Plaintiff's allegations, at least in part.  Given the deposition testimony, there is a genuine dispute as to whether Tutela worked at FCI Fort Dix on December 16, 2018.

Importantly, the question of whether Plaintiff suffered a physical injury from the alleged battery is relevant to Plaintiff's FTCA claim, as a prerequisite to seeking compensatory damages against the United States, although it is not an element of common law battery in New Jersey.  The PLRA provides, in relevant part:

> [n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e); *see Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) ("Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), predicates a prisoner's claim for mental or emotional injury suffered while in custody on a showing of accompanying physical injury.")  This provision applies only to claims for compensatory damages.  *Mitchell*, 318 F.3d at 533.  It is inapplicable to claims for nominal damages.  Injunctive relief and punitive damages are not available remedies under the FTCA.  28 U.S.C. § 1346(b)(1), § 2674.  *Michtavi v. United States*, 345 F. App'x 727, 730 n. 4 (3d Cir. 2009) (per curiam).

Plaintiff's allegations do not constitute a sexual act under § 2246; therefore, to seek compensatory damages under the FTCA for his battery claim under New Jersey law, Plaintiff he must show that he suffered a physical injury.  The physical injury must be "less-than-significant-but-more-than-*de-minimis* . . ."  *Mitchell*, 318 F.3d at 535-36.

Defendants have submitted admissible evidence suggesting Tutela never touched Plaintiff, let alone caused any injury.  Recall that Defendants have submitted evidence that Tutela was not present.  This is not a case, however, where Plaintiff relies solely on a "sham affidavit" to explain an inconsistency with his prior deposition testimony.  *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253-55 (3d Cir. 2007) (describing standard for determining a sham affidavit does not defeat a motion for summary judgment).  In his opposition brief, Plaintiff points to various records where he stated that Tutela grabbed and pulled on his genitals so hard that he tore out a handful of hair and caused Plaintiff excruciating pain.  Although the evidence seems to support Defendants' version when compared to Plaintiff's version, this Court cannot find there is no genuine dispute of fact.  There is enough, even if barely, to create an issue of disputed fact on whether Plaintiff can seek compensatory damages for mental and emotional distress on his FTCA claim of battery under New Jersey law.

The Court intends to proceed at trial in stages.  The jury will first hear evidence and determine whether Tutela did, in fact, work at FCI Fort Dix on December 16, 2018.  If the jury determines that Tutela did not work at FCI Fort Dix

on that day, the Court will enter a judgment for Defendant Tutela because he could not have committed a battery against Plaintiff on the day alleged.  If the jury determines Tutela worked at FCI Fort Dix on December 16, 2018, Plaintiff may proceed with his case in chief.  Before Plaintiff may seek compensatory damages for mental and emotional distress, the jury must first decide, pursuant to 42 U.S.C. § 1997e(e), whether Plaintiff suffered more than a *de minimus* physical injury.

## IV.     CONCLUSION

For the reasons discussed above, Plaintiff has failed to establish spoliation of evidence in support of his claim for sanctions of default judgment. Tutela's summary judgment motion on the *Bivens* claim will be granted because the Court declines to imply a damages remedy in a new *Bivens* context.  The Court will deny the Government's motion for summary judgment on Plaintiff's FTCA claim because a genuine issue of disputed fact exists for trial.


An appropriate Order follows.

**Date:  June 28, 2022**                    s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            Chief United States District Judge

31